Charles H. GRAHL
v.
The UNITED STATES.
No. 163–62.

United States Court of Claims.
July 17, 1964.

Frederick Bernays Wiener, Washington, D. C., for plaintiff.

LeRoy Southmayd, Jr., Washington, D. C., with whom was Asst. Atty. Gen., John W. Douglas, for defendant.

Before JONES, Senior Judge, REED, Justice (Ret.), sitting by designation, and LARAMORE, DURFEE and DAVIS, Judges.

LARAMORE, Judge.

We have before us in this case a retired Army officer who has performed more than 20 years of active Federal service. A ruling of the Comptroller General has deprived him of any retirement credit for the last five years of that service, and he has sued to reverse the effects of that ruling.

On June 30, 1955, plaintiff was retired as a Brigadier General in the U. S. Army Reserve. He was then entitled to receive retired pay under Title III of the Army and Air Force Vitalization and Retirement Equalization Act of 1948.[1] Title III provides for the so-called "point system" of retirement for members of the Reserve forces and the National Guard who have received credit for more than 20 years of Federal service, though they may have performed less than 20 years of active duty service, and who have reached age 60.

Prior to his retirement, plaintiff had served as Adjutant General of the State of Iowa and as Director of Selective Service for that state. He held a federally-recognized commission in the Iowa National Guard and was, therefore, entitled to the retirement benefits of a Reserve officer for his training periods and his active service.[2] Shortly after plaintiff re-

---

1. 62 Stat. 1081, 1087 (1948). The provisions of Title III are codified as Chapter 67 of Title 10, United States Code, sections 1331–1337. As so codified, they were enacted into positive law in the Act of August 10, 1956, 70A Stat. 1, 102–104. This statute enacted into positive law all of Titles 10 and 32 of the Code. In general, however, the enactment of the codification was intended merely to restate the pre-existing substantive law and not to alter it. See section 49(a) of the Act of August 10, 1956, 70A Stat. at 640. When the text of the statute from which a codified section was drawn provides a clearer indication of the purpose of Congress, reference will be made to the statute prior to codification.

2. See 10 U.S.C. § 1332 (1958), as amended (Supp. IV, 1963).

tired, General Hershey, the Director of Selective Service, requested that he be recalled to active duty so that he could continue to serve in the Selective Service System. Since there existed no billet for plaintiff in his retired grade of Brigadier General, General Hershey requested that plaintiff be recalled in the grade of Colonel. However, the Adjutant General of the Army took the position that plaintiff could not be ordered to active duty as a Reserve officer except in his retired grade[3] and he so advised General Hershey.

Plaintiff, desiring to return to active service, thereupon resigned his commission as a Brigadier General, Retired Reserve. On October 12, 1955, the day after resignation was accepted, plaintiff was appointed a temporary officer in the Army of the United States in the grade of Colonel, pursuant to section 515(e) of the Officer Personnel Act of 1947,[4] and was concurrently ordered to active duty for one year. His tour of active duty was subsequently extended for an indefinite period.

Plaintiff entered onto active duty under his Army of the United States commission. He continued to serve in an active status for almost five years. As time wore on, plaintiff realized that this additional period of active duty, when combined with his previous active service, would give him a total of more than 20 years of active service as a member of the Army. Officers with 20 years or more active service are entitled to retire under Title II of the Army and Air Force Vitalization and Retirement Equalization Act of 1948.[5] Retirement under this provision, being financially more remunerative than "point system" retirement under Title III,[6] was, for plaintiff, a more advantageous method of retirement if he were eligible for it. The Judge Advocate General of the Army had ruled that an officer retired under Title III who had been recalled to active duty could be credited with his last period of service for the

3. Section 207 of the Reserve Officer Personnel Act of 1954, 68 Stat. 1147, 1152, in force when the Adjutant General rendered this decision, provided:

"Reserve officers who are hereafter ordered to active duty or active duty for training shall be so ordered in the grades held by them as Reserve officers except that the appropriate Secretary may, in his discretion, order such officers to active duty in any higher temporary grade."

When Title 10 was enacted into positive law in 1956, this provision was not carried over. Instead, the statute added section 3443, to Title 10, 70A Stat. at 196. Section 3443 provided that a Reserve officer who is ordered to active duty may, with his consent, be appointed to a temporary grade that is higher or lower than his Reserve grade. Section 36B of the Act of September 2, 1958, 72 Stat. 1437, 1568–1570, repealed section 3443, and the provisions of section 207 were re-enacted as section 3494 of Title 10. See 72 Stat. 1481 (1958).

4. 61 Stat. 795, 907 (1947).

5. 62 Stat. 1081, 1084 (1948). These provisions are now found in 10 U.S.C. §§ 3911–3929 (1958 Ed.).

6. A Regular or Reserve officer who is retired under 10 U.S.C. § 3911 is entitled to receive retired pay at the rate of two and one-half percent of his basic pay for every year of service, up to a maximum of 75 percent of his basic pay. As a general rule, a Reserve officer who is under the "point system" receives one point per day for every day of active duty, one point for each day spent in an inactive duty training session and 15 points per year for being a member of a Reserve component. He receives credit for a year of service in any year in which he has obtained at least 50 points, but he cannot accumulate more than 60 points in any one year. He is entitled to retired pay when he has received credit for 20 years of service and has reached the age of 60. His retired pay is computed by giving him credit for one day of active service for each day actually spent on active duty and one day of active service for each point he has received. Under 10 U.S.C. § 1401, he is then paid at the rate of two and one-half percent of his basic pay for each year of service with which he has been credited. Under this system, plaintiff received credit for 17.28 years of service under Title III at the time of his original retirement. Under Title II, he would have been credited with more than 30 years of service. See footnote 9, infra.

purpose of retirement under Title II.[7] However, plaintiff thought that this ruling applied only to officers who held Reserve commissions on the date they became eligible for Title II retirement and not to Army of the United States officers.[8] On April 12, 1960, therefore, plaintiff wrote to the Adjutant General, stating his belief that "an inequity exists in my case" and requesting an appointment, "as an exception to policy," as a Colonel in the Army Reserve. This letter was forwarded to the Assistant Secretary of the Army for Manpower, Personnel and Reserve Forces. He wrote to General Hershey, advising that plaintiff's request would be granted and that plaintiff would be appointed a Reserve Colonel so that he could retire under Title II.

On July 18, 1960, plaintiff was appointed a Colonel, U. S. Army Reserve. Fifteen days later, orders were issued retiring plaintiff as a Reserve Colonel under 10 U.S.C. § 3911 by reason of his completion of 20 years of active Federal service. His retirement was effective on September 1, 1960. On that date, plaintiff began receiving the retired pay applicable to a person who has retired under Title II in the grade of Colonel.[9]

Thereafter, relying on our interpretation of 10 U.S.C. § 3963 in the case of Grayson v. United States, 137 Ct.Cl. 779, 149 F.Supp. 183 (1957), plaintiff requested the Secretary of the Army to amend his retirement orders to retire him in the grade and with the pay of a Brigadier General. The Army transmitted plaintiff's request to the Comptroller General.

Bypassing the immediate issue presented to him, the Comptroller General ruled that the appointment of plaintiff as a Reserve Colonel on July 18, 1960 was unauthorized and illegal because, his 60th birthday having passed prior to that date, plaintiff was ineligible for such appointment under 10 U.S.C. § 3843(b) and the Army regulations that implemented it. Decision No. B–145849, 41 Comp.Gen. 131 (1961). The Comptroller General then held that plaintiff was excluded from retirement under Title II because he was not a Reserve commissioned officer on the date of his retirement, and the language of 10 U.S.C. § 3911 permits only "a regular or reserve commissioned officer" to retire under Title II. The opinion went on to state that since plaintiff, when he returned to duty in 1955, was not retained on active service within the meaning of 10 U.S.C. § 676, his active duty during that period of service could not be credited for the purpose of increasing his retired pay under Title III. In so ruling, the Comptroller General relied on 10 U.S.C. § 1334(b), which at that time provided that active duty time spent after retirement or transfer to the Retired Re-

---

7. 6 Dig.Ops. JAGAF 429 (1956). In an earlier opinion, the Judge Advocate General of the Army had held that an average Reserve officer who is retained on active duty with the Selective Service System must be given credit in computing his Title III retired pay for the time spent on his extended tour of duty. 4 Dig.Ops. JAGAF 539 (1954).

8. Plaintiff relied on an informal interpretation of 10 U.S.C. § 3911, the basic authority for Title II retirement. That section provides:
 "The Secretary of the Army may, upon the officer's request, retire a *regular* or *reserve* commissioned officer of the Army who has at least 20 years of service computed under section 3926 of this title, at least 10 years of which have been active service as a commissioned officer." [Emphasis supplied]

Evidently plaintiff feared that, as an Army of the Untied States officer, he would not be deemed to come within the italicized language. This fear was not wholly unfounded; the Comptroller General so construed the statute.

9. Although plaintiff was allowed to retire under section 3911 by reason of his performance of 20 years of *active* Federal service, upon becoming eligible for retirement under this section, he was paid retired pay based upon his *total* service, both active and inactive. This result is required by 10 U.S.C. § 1405. Thus, plaintiff received the retired pay applicable to a Colonel credited with more than 30 years of service. As we have observed in footnote 6, supra, under Title III retirement, plaintiff would be credited with only 17.28 years of service.

serve may not be credited in any computation of years of service for Title III retirement.[10]

As a result of the Comptroller General's decision, the Army revoked plaintiff's retirement orders and, in a letter from the Adjutant General to plaintiff, took the view that plaintiff was restored to the position he was in before his return to active duty in 1955.[11] Consequently, plaintiff, in the Army's eyes, was a Brigadier General of the Retired Reserve entitled to retired pay under Title III as of July 1, 1955 (but not so entitled for the duration of his subsequent period of active duty) without credit for the period of active service from October 12, 1955 to September 1, 1960. The Army Finance Center thereupon demanded that plaintiff refund the difference between the amount of retired pay plaintiff had received, from September 1, 1960 to September 30, 1961, under his 1960 Title II retirement as a Colonel and the amount it said he should have been paid under Title III as a Brigadier General.[12] When plaintiff refused to make the refund, $262.29 per month was withheld from his pay beginning on December 1, 1961 until the claim was liquidated.

In ruling that plaintiff's appointment as a Reserve Colonel was invalid, the Comptroller General took the position that the appointment was barred by the provisions of 10 U.S.C. § 3843(b), which read as follows:

"Except as provided in section 3845 of this title, after July 1, 1960, each commissioned officer in an active status in a reserve grade below brigadier general shall, on the last day of the month in which he becomes 60 years of age—

"(1) be transferred to the Retired Reserve, if he is qualified and applies therefor; or

"(2) if he is not qualified or does not apply therefor, be discharged from his reserve appointment."

Even though the wording of this statute seems, at first blush, to prohibit the service of officers over the age of 60 absolutely and in all cases, it seems clear that there are exceptions to this prohibition. Plaintiff was recalled to active duty in the Army of the United States pursuant to section 515(e) of the Officer Personnel Act of 1947.[13] That section provides:

"In time of emergency declared by the President, or by the Congress,

---

10. At the time the Comptroller General's decision was rendered, 10 U.S.C. § 1334 (b) read as follows:
"Time spent after retirement or transfer to the Retired Reserve may not be credited in any computation of years of service under this chapter."
The Comptroller General's interpretation of this section to bar plaintiff from receiving any credit for his last tour of active duty in computing his Title III retired pay seemed, at that time, justified on the face of the statute. This interpretation, however, was not in accordance with the intention of Congress, as it made clear by amending section 1334 (b). In section 108 of the Act of September 7, 1962, 76 Stat. 506, 509, section 1334(b) was amended to read:
"Time spent after retirement (without pay) for failure to conform to standards and qualifications prescribed under section 1001 of this title may not be credited in a computation of years of service under this chapter."
Section 305 of the Act (76 Stat. at 526) provided that section 108 would be ret-

roactively effective as of August 10, 1956 "for all purposes." Consequently, plaintiff is, at a minimum, entitled to recover for the increase in his retired pay under Title III resulting from crediting him with his nearly five additional years of active duty from 1955 to 1960. Defendant has conceded that this is the case.

11. Since plaintiff was merely reverting to a *status quo ante*, this was not technically a re-retirement, and no new retirement orders were issued to plaintiff.

12. The Finance Center calculated the overpayment at $3,846.05. It also said that, by reason of an adjustment of plaintiff's Title III retired pay prior to his re-entry onto active duty, he had been overpaid an additional $54.54. The total demand was for the refund of $3,900.-59.

13. 61 Stat. 795, 907 (1947); section 515 (e) is now found in 10 U.S.C. § 3444.

and in time of war, the President is authorized to appoint qualified persons (including persons who hold no Regular Army or Reserve status) as temporary officers in the Army of the United States in any of the several commissioned officer grades, and persons so appointed may be ordered into the active military service of the United States to serve therein for such periods of time as the President may prescribe. The appointment of a temporary officer, if not sooner vacated, shall continue during the emergency or war in which the appointment was made and for six months thereafter."

Since, at that time, a declaration of national emergency was in effect (Proc. No. 2914, 15 F.R. 9029 (1950)) and plaintiff was, in the President's judgment, a qualified person, it seems clear that plaintiff's status as an Army of the United States officer was validly conferred upon him. Neither the Comptroller General in his ruling nor the defendant in this court has raised any question as to the validity of that commission or the legality of plaintiff's service under it. Defendant now concedes that plaintiff may credit that service in computing his Title III retired pay.

The question before us, therefore is whether the Secretary of the Army's attempt to commission plaintiff as a Reserve officer while plaintiff was serving as an Army of the United States officer was effective. The Comptroller General said that plaintiff could not be so commissioned because he was over the age of 60 at that time. Defendant has adopted the Comptroller's position in this respect. Its attack on that commission is two-pronged. First, defendant points to the provisions of 10 U.S.C. § 3843(b), which require the retirement or discharge of Reserve officers below the general officer grades who have reached age 60. Second, defendant refers us to para-

graph 15 of Army Regulation 140–160 (25 May 1959), which implements the command of section 3843(b) and to paragraph 25 of Army Regulation 140–100 (17 May 1956), which prohibits the appointment of officers in the Reserve grade of Colonel if, as in plaintiff's case, such officers would pass the mandatory retirement age specified in Army Regulation 140–160 within two years of such appointment.

As we have previously observed, the apparently absolute language of section 3843(b) is not without exceptions. One such exception, as we have seen, is found in the authority of the President to appoint temporary Army of the United States officers under section 515(e) of the Officer Personnel Act of 1947. Plaintiff argues that another exception exists by virtue of 10 U.S.C. § 676, which permits the Secretary of the Army to retain on active duty an officer who has qualified for retirement pay under Title III. The text of that provision is as follows:

"Any person who has qualified for retired pay under chapter 67 of this title may, with his consent and by order of the Secretary concerned, be retained on active duty, or in service in a reserve component other than that listed in section 1332(b) of this title. A member so retained shall be credited with that service for all purposes." [14]

We think that plaintiff is correct, and that section 676 was applicable to him when he was given a Reserve commission in 1960. Section 676, by its terms, applies to an officer who has qualified for retired pay under the so-called "point system." Under that system, an officer may not receive retired pay unless and until he has reached 60 years of age. See 10 U.S.C. § 1331(a) (1). Section 676, therefore, must permit the retention on active duty of an over-age officer whose release from duty would otherwise be required by section 3843(b). If sec-

14. Chapter 67 of Title 10 is the codification of Title III now found in 10 U.S.C. §§ 1331–1337.

tion 676 were not interpreted to create an exception to the mandatory retirement-or-discharge requirement, it would be utterly devoid of meaning. The settled administrative interpretation of these two provisions, moreover, appears to be that "10 U.S.C. 676 establishes an exception to the general requirements of other provisions of law for mandatory discharge and retirement for age * * *." Decision No. B–113387, 38 Comp.Gen. 246, 247 (1958).[15]

 We think that, in plaintiff's case, all of the requirements of section 676 were met. That section contemplates a retention on active duty of an officer serving in an active status at the time the Secretarial discretion is exercised, as distinguished from the recall to duty of an officer in a retired status. Navarro v. United States, 155 Ct.Cl. 717 (1961). The Comptroller General took the view that section 676 was inapplicable to plaintiff at the time of his return to active duty in 1955 because plaintiff was in the Retired Reserve at that time. But the Comptroller failed to consider the applicability of that section to plaintiff's Reserve commission, which was tendered him in 1960, at a time when he was in an active status. This, we think, was an error. While it is true that, immediately prior to July 18, 1960, plaintiff was not serving as a member of the Reserve, but rather as a temporary Army of the United States officer, the statute makes no requirement that the retention on ac-

tive duty must be a continuation of service as a Reserve officer.[16] All that the statute required of plaintiff was that he be a person who had qualified for Title III retired pay and who was serving on active duty at the time the decision to retain him, notwithstanding his age, was implemented. Plaintiff satisfied these criteria.

There can be no doubt that the decision to retain him was made at the appropriate administrative level. The exhibits to plaintiff's motion show that the person who decided to tender plaintiff the Reserve commission was the Assistant Secretary of the Army for Manpower, Personnel and Reserve Forces. We perceive no reason to hold that this official did not or could not exercise, on behalf of the Secretary of the Army, the discretion which section 676 vested in him. Defendant has not challenged the validity of the Assistant Secretary's act on this ground.

 Instead, defendant has attacked plaintiff's Reserve commission on the theory that Army Regulation 140–100, prohibiting the appointment of persons over the age of 55 in the grade of Colonel, limited the authority of the Secretary in this instance. We do not agree.

In the first place, section 676, if it is applicable to anyone, must be applicable to persons over the age of 55, since, as we have seen, only officers who are over the age of 60 come within its terms. It follows that defendant's reading of that

---

15. See also Decision No. B–137737, 38 Comp.Gen. 429, 431 (1958), which also took this position.

16. Even if this requirement were read into the statute, we think it is adequately covered under the facts of this case by the provisions of section 515(h) of the Officer Personnel Act of 1947, 61 Stat. 795, 908 (now found, in slightly altered form, in 10 U.S.C. § 3491), which states: "Each temporary officer and each Reserve officer of any Reserve component, serving on active Federal duty in any commissioned grade, permanent or temporary (herein referred to as 'active-duty grade'), shall be entitled, while so serv-

ing, to the same rights, privileges, and benefits as now or hereafter provided by law for an officer of the Officers' Reserve Corps of the same length of service holding appointment in the Officers' Reserve Corps in a grade the same as such 'active-duty grade' and serving on active duty in the grade held in the Officers' Reserve Corps." This statute accorded to plaintiff all of the benefits of a Reserve officer while he served under his army of the United State commission. We think that one of those benefits was the right to be retained on active service under 10 U.S.C. § 676. Cf. Watman v. United States, 152 Ct.Cl. 769, 288 F.2d 472 (1961).

regulation would nullify the purpose and effect of the statute. We do not think that the Secretary of the Army, in promulgating Army Regulation 140–100, intended this result; nor could he have accomplished such a blanket nullification of an Act of Congress.[17] The terms of this regulation would, therefore, seem to apply only to the initial commissioning of an officer and not to a commission conferred in order to retain him on active duty under the authority of section 676.

■ Secondly, even if this regulation were applicable to plaintiff, we see no reason why the Secretary could not waive it in an individual case. This is not a case where the function of the regulation was to protect the rights of an individual facing the possibility of deleterious administrative action.[18] In this case, the regulation, if applicable to plaintiff, deprived him of a valuable right and a consummation he devoutly desired. He requested the Reserve commission "as an exception to policy," and the letter of the Assistant Secretary to plaintiff's immediate superior, General Hershey, stated: "I am happy to inform you that it will be possible to do as Colonel Grahl desires." If a waiver of the regulation were necessary in these circumstances, one was knowingly granted.

■ It follows that plaintiff was validly retained on active duty pursuant to 10 U.S.C. § 676 when he was appointed a Reserve Colonel. Consequently, plaintiff was a "reserve commissioned officer of the Army" within the meaning of 10 U.S.C. § 3911 on September 1, 1960, when he was retired from the Army. Since, on that date, he had more than 20 years of service computed under 10 U.S.C. § 3926 (a),[19] he was properly accorded Title II retirement at that time.

■ We next turn to the question whether the Army was correct in retiring plaintiff as a Colonel or whether, as plaintiff contends, he was entitled to be retired in the grade of Brigadier General. Plaintiff asserts that 10 U.S.C. § 3963(a) mandated his retirement in the higher grade. This enactment, a codification of section 203(a) of the Army and Air Force Vitalization and Retirement Equalization Act of 1948, supra, provides as follows:

"A regular commissioned officer who is retired, or a reserve commissioned officer who is retired or to whom retired pay is granted, is entitled to a retired grade equal to the highest temporary grade in the Army in which he served on active duty satisfactorily, as determined by the Secretary of the Army, for not less than six months." [20]

In Grayson v. United States, supra, we considered the application of section 203 (a) to an officer who, like plaintiff, had held a federally-recognized National Guard commission in a grade below Brigadier General,[21] but who was advanced to

17. This is not to say that the Secretary could not simply refuse to exercise the discretion given him under § 676 by refusing to apply it to anyone.

18. Compare, e. g., Service v. Dulles, 354 U.S. 363, 77 S.Ct. 1152, 1 L.Ed.2d 1403 (1957); Vitarelli v. Seaton, 359 U.S. 535, 79 S.Ct. 968, 3 L.Ed.2d 1012 (1959).

19. 10 U.S.C. § 3926(a) provides, in part:
"For the purpose of determining whether an officer of the Army may be retired under section 3911, 3918, or 3924 of this title, his years of service are computed by adding—
(1) all active service performed as a member of the Army * * *."

20. 62 Stat. at 1085. As originally enacted, section 203(a) required that the temporary grade be held during the period from September 9, 1940 to June 30, 1946. This requirement was retained when the codified version, 10 U.S.C. § 3963(a), was enacted into positive law. See 70A Stat. at 230–231 (1956). It was deleted in 1958. 72 Stat. 1437, 1489.

21. Grayson had been a Colonel before he became Adjutant General of Mississippi. Plaintiff was a Lieutenant Colonel before he became Iowa's Adjutant General, but he was advanced to the grade of Colonel after leaving the office and served in that grade in the Selective Service System.

that grade and was federally recognized as such when he was appointed Adjutant General of his state and served on active duty as State Director of Selective Service. We held that, under section 203(a), Grayson was entitled to retirement in the grade of Brigadier General. We have concluded that plaintiff must be accorded the same treatment.

We said in Grayson that the primary purpose of section 203(a) was to give an officer who had served in a higher grade during wartime the benefit of that higher grade upon retirement, even though that retirement became effective while he served in a lower grade.[22] The officer would be entitled to retire in the higher grade in spite of the fact that, giving effect to technical linguistic niceties, the higher grade might be deemed "permanent";[23] for section 203(a), as we said, "was not intended to prefer an officer holding a temporary grade over an officer holding a permanent grade." Id. at 782, 149 F.Supp. at 185.

In Grayson, we also held that service as a Brigadier General while acting as state Adjutant General was service in a "temporary grade" within the meaning of the statute. The reasons which caused us to reach this conclusion apply with equal force to the case now before us. Defendant would have us distinguish Grayson on the ground that the present plaintiff held the post of Adjutant General of Iowa for a fixed 4-year term and could be reappointed to additional terms,[24] while the plaintiff in Grayson held his office for a term concurrent with that of the Governor who appointed him and could not be reappointed. We do not think that this distinction is sufficient to import a difference between the two cases. The critical factor that makes the federally-recognized grade of Brigadier General of a state Adjutant General a temporary one is, as we recognized in Grayson,[25] that the grade devolves upon the Adjutant General only so long as he performs the duties of that particular office. Once he leaves that job, the higher grade evaporates and he reverts to his permanent rank in the federally-recognized National Guard. Thus, once plaintiff ceased to be the Adjutant General of Iowa, and upon becoming state Director of Selective Service, he was reduced to the grade of Colonel. An officer who serves in a permanent grade—as distinguished from an officer in a temporary grade—finds himself in an entirely different position; he continues to hold that grade no matter what his particular duties are, and if he is posted to perform the duties of another job, he does not (with certain exceptions)[26] incur a reduction of his grade by reason of the change in his duties. Since plaintiff held the rank of Brigadier General only while he served as an Adjutant General, we conclude that, under the rule established in the Grayson case, he was a temporary holder of that rank within the meaning of 10 U.S.C. § 3963(a).

22. See the testimony of General Paul, who presented the Department of Defense's case in the subcommittee hearings on the bill that ultimately became the Equalization Retirement Act. General Paul said: "I think it would be most unjust to deny the officer corps the temporary rank that they reached during the period of crisis and where they demonstrated themselves to be satisfactory in that job." Hearings Before Subcommittee #7, Retirement, of the House Committee on Armed Services, 80th Cong., 1st Sess. 3354 (1947).

23. Congress attempted to define the terms "permanent grade" and "temporary grade" in section 515(i) of the Officer Personnel Act of 1947, 61 Stat. 795, 908. The language of this section sheds very little light on the problem before us.

24. See Iowa Code Ann. § 29.11 (Supp. 1963).

25. 137 Ct.Cl. at 783, 149 F.Supp. 183.

26. See, e. g., 10 U.S.C. § 3034(b) (Chief of Staff, while so serving, has the grade of General); 10 U.S.C. § 3036(b) (Chiefs of certain branches shall be appointed in the regular grade of Major General).

It follows that, upon plaintiff's retirement from active service in 1960, he should have been retired in the grade of Brigadier General.

We, therefore, conclude that plaintiff has been wrongfully deprived of the difference between the retired pay of a Brigadier General who has been retired under Title II and the retired pay of a Brigadier General under Title III that he has received. He is entitled to recover this sum from and after September 1, 1960, the date of his retirement. Plaintiff's motion for summary judgment is granted and defendant's motion is denied. Judgment is entered to this effect. The amount of plaintiff's recovery will be determined under Rule 47(c) (2) of the Rules of this court.